MAY, J.
The struggle between environmental concerns and clerical efficiency (or lack thereof) brings this case before the court. We reverse for issuance of a default permit, allowing the Department of Environmental Protection (DEP) to conduct a hearing to determine reasonable conditions necessary to protect the environment.
On June 13, 2000, a landowner requested verification that his proposed land development conformed to the “No Notice General Permit for Activities in Uplands” from the South Florida Water Management District (SFWMD). He planned to dredge a canal to provide material for a house pad. On June 20th, the SFWMD wrote to inform him that the proposed activity could be undertaken, but warned *188 that this authorization did not relieve him of obtaining all necessary federal, state, local and special district authorization.
The series of events which followed exemplifies the confusion which surrounded the landowner’s application. On August 31st, the Port St. Lucie office of the DEP received the landowner’s application for an Environmental Resource Permit (ERP). The application indicated that the site of the project was in Glades County. The DEP forwarded the application to its South District office where it was received on September 8th.
On October 4th, the South District office wrote to the landowner and informed him that the application should be processed by the SFWMD. The South District office returned the application unprocessed, and informed the landowner that it was his responsibility to resubmit the application to the Okeechobee Service Center of the SFWMD. The DEP sent a copy of this letter and the application to the SFWMD, where it was received on October 9th. The tracking checklist contained a handwritten note: “Please Re-enter Mr. Tuten effective 10/13/00 & update P.S. For Highland Co. exten.” and noted a receipt date of October 13th.
No further activity occurred until December 5th. On that date, an employee of the DEP called the landowner and asked if he was going to withdraw his application and resubmit it to the SFWMD. The landowner asked why his application had been transferred back and forth between agencies. He further advised that he had expected to hear from the DEP within thirty days of receipt of his application. The employee acknowledged that he had missed the review date, but stated that the SFWMD had jurisdiction over the application.
On December 6th, the day after the telephone conversation, the Director of the DEP District Management wrote to the landowner, acknowledging receipt of the application on October 13th. The letter, which was received by the landowner on December 8th, indicated that the project could not be approved. On December 11th, the DEP faxed the landowner a waiver of the ninety day time limit under sections 120.60(1) and 403.0876, Florida Statutes,(2000).
On December 12th, the landowner responded to the December 6th letter from the DEP, questioning the application date because he had a stamped document showing a receipt date of August 31st. On the same date, the DEP sent another letter acknowledging receipt of the application and noting a receipt date of October 13th. The letter asked for additional information by January 5, 2001, to process the application.
On January 8th, the DEP again requested the waiver form. The landowner advised that his attorney was reviewing it. On January 11, 2001, the DEP promulgated an order denying the environmental resource permit.
Section 373.4141,' Florida Statutes,(2000) provides in pertinent part:
(1) Within 30. days after receipt of an application for a permit under this part, the department or the water management district shall review the application and shall request submittal of all additional information the department or the water management district is permitted by law to require.... Within 30 days after receipt of such additional information, the department or water management district shall review it and may request only that information needed to clarify such additional information or to answer new questions raised by or directly related to such additional information. ...
*189 (2) A permit shall be approved or denied within 90 days after receipt of the original application, the last item of timely requested additional material, or the applicant’s written request to begin processing the permit application.
Section 120.60, Florida Statutes(2000) provides in pertinent part:
(1) Upon receipt of an application for a license, an agency shall examine the application and, within 30 days after such receipt, notify the applicant of any apparent errors or omissions and request any additional information the agency is permitted by law to require. An agency shall not deny a license for failure to correct an error or omission or to supply additional information unless the agency timely notified the applicant within this 30-day period. An application shall be considered complete upon receipt of all requested information and correction of any error or omission for which the applicant was timely notified or when the time for such notification has expired. Every application for a license shall be approved or denied within 90 days after receipt of a completed application unless a shorter period of time for agency action is provided by law.... An application for a license must be approved or denied within the 90-day or shorter time period.... The agency must approve any application for a license ... if the agency has not approved or denied the application within the time periods prescribed by this subsection.
The landowner argues that the ninety-day period began to run from first receipt of his application, August 31, 2000. The DEP argues that the time began to run from October 13, 2000, when it reinstated the landowner’s application. We agree with the landowner that the operative date is August 31, 2000.
Both sections 373.4141(1) and 120.60(1), Florida Statutes provide that the “receipt” of an application is the triggering date. Furthermore, section 373.4141(1) provides for receipt by “the department or the water management district.” Section 120.60(1) provides for receipt by an “agency.” Thus, the agencies [DEP or SFWMD] had ninety days from August 31, 2000, to approve or deny the landowner’s application or thirty days from the same date to request additional information. Neither of these events occurred. Therefore, the agency must issue a default permit.
We do not find, however, that requiring the issuance of the permit precludes the DEP from taking measures to protect the environment. The Second District has held that the statutes allow the DEP to hold a hearing “to determine the reasonable mitigative conditions necessary to protect the interest of the public and the environment, prior to issuing a default permit.” Manasota-88, Inc. v. Agrico Chem. Co., 576 So.2d 781, 783 (Fla. 2d DCA 1991). If a party finds the conditions imposed “onerous or unreasonable,” the appellate courts are available for review. Id.
We reverse and remand to the DEP to issue a default permit after a hearing to determine if conditions should be imposed to insure the protection of the environment.
POLEN, C.J., and HAZOURI, J., concur.